```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

Buddy R. Allen,

    Plaintiff,

    v.                          Case No. 2:12-cv-619

Carolyn W. Colvin,
Acting Commissioner of
Social Security,

    Defendant.

ORDER

Plaintiff, Buddy R. Allen, brings this action under 42 U.S.C. §§ 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income benefits.  This matter is before the court for consideration of plaintiff's July 8, 2013, objections to the June 24, 2013, report and recommendation of the magistrate judge, recommending that the court affirm the decision of the Commissioner.

I. Standard of Review

If a party objects within the allotted time to a report and recommendation, the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b).  Upon review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

The court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and

was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Put another way, a decision supported by substantial evidence is not subject to reversal, even if the reviewing court might arrive at a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). "Substantial evidence exists when 'a reasonable mind could accept the evidence as adequate to support a conclusion [and] . . . presupposes that there is a zone of choice within which the decision-makers can go either way, without interference by the courts.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal citation omitted). Even if supported by substantial evidence, however, "'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

II. Administrative Record

In his report and recommendation, the magistrate judge accurately summarized the evidence in the administrative record, and the court adopts the magistrate judge's description of the administrative record. The ALJ concluded in his decision of October 28, 2010, that plaintiff had the following severe impairments: obesity, degenerative disc disease of the lumbar

spine, residuals of tendon transfer and carpal tunnel repair on the right hand, and depression. Doc. 8-2, PageID 45. Plaintiff and Jerry A. Olsheski, a vocational expert, offered testimony at a video hearing held on October 27, 2010. The record also includes the treatment records of Dr. Olson, who began treating plaintiff as his primary care physician on May 30, 2007. These records include a diagnosis form dated April 28, 2009, which was completed by Eric Chilton, PA-C, Dr. Olson's physician's assistant, and a physical capacity evaluation form completed by Dr. Olson on July 27, 2010.

    In regard to plaintiff's physical condition, the medical evidence also includes the records of: Dr. Arthur Neil Cole, M.D., a neurosurgeon, who performed back disc surgery on plaintiff on January 17, 2008; Dr. James Weiss, an orthopedic specialist who saw plaintiff on September 22, 2008, following back surgery; Dr. Gary L. Rea, an orthopedic specialist at the OSU Comprehensive Spine Center who saw plaintiff on August 6, 2010, for complaints of hip problems; Dr. Thomas Kovack, D.O., an orthopedic surgeon who saw plaintiff in 2007 for problems with his right hand and wrist; Dr. James Cassandra, D.O., an orthopedic surgeon who performed carpal tunnel surgery on plaintiff's right hand on March 20, 2008, surgery on plaintiff's left shoulder in February, 2010, and arthroscopic surgery on plaintiff's right shoulder on September 7, 2010.; Dr. J. Mark Hatheway, M.D., an orthopedic surgeon who performed arthroscopic surgery on plaintiff's left knee on September 28, 2007; and a physical residual functional capacity assessment based upon the review of plaintiff's medical records by state agency physicians Dr. Gerald Klyop on December 17, 2008, and Dr. Diane Manos on June 30, 2009.

In regard to plaintiff's mental condition, the record reveals that plaintiff did not have a treating mental health specialist. The mental health evidence consists of the reports of: Dr. Jeremy D. Kaufman, Psy.D, a psychologist who examined plaintiff on March 14, 2008, at the request of the Ohio Department of Jobs and Family Services; the October 27, 2008, opinion of Allan Rain, M.A., a psychologist who examined plaintiff on behalf of the Bureau of Disability Determination; and the opinions of psychologists Dr. Irma Johnston, Psy.D, dated November 19, 2008, and Carl Tishler, Ph.D, dated April 4, 2009, based on their review of plaintiff's records for a state agency.

III. Plaintiff's Objections

A. Discussion of Opinion of Treating Physician

Plaintiff objects to the findings of the magistrate judge regarding the adequacy of the analysis of the administrative law judge ("ALJ") concerning whether the opinion of treating physician Dr. Kevin Olson, D.O., was entitled to controlling weight. Plaintiff also argues that the magistrate judge and the ALJ did not adequately explain why the opinions of the nontreating experts were entitled to more weight than Dr. Olson's opinion.

The Commissioner has implemented regulations concerning how medical opinions, including those of a treating physician, are to be weighed. The Commissioner has also issued a policy statement, Social Security Ruling 96-2p, 1996 WL 374188 (Soc. Sec. Admin. July 2, 1996), to guide an ALJ's assessment of a treating-source opinion. An opinion from a medical source who has examined a claimant is generally given more weight than one from a source who has not performed an examination. 20 C.F.R. §§404.1502,

404.1527(c)(1). An opinion from a medical source who regularly treats the claimant is afforded more weight than one from a source who has examined the claimant but does not have an ongoing treatment relationship. 20 C.F.R. §§404.1502, 404.1527(c)(2).

Treating-source opinions must be given "controlling weight" if: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §404.1527(c)(2). The term "substantial evidence" denotes a quality of evidence amounting to "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188 at *3. The conflicting substantial evidence "must consist of more than the medical opinions of nontreating and nonexamining doctors." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013)

Even if the opinion of the treating doctor does not meet these "controlling weight" criteria, this does not mean that the opinion must be rejected; rather, it "may still be entitled to deference and be adopted by the adjudicator." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188 at *1. If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on factors such as the length, frequency, nature, and extent of the treatment relationship, the treating source's area of specialty, and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence. 20 C.F.R. §404.1527(c)(2)-(6); *Gayheart*, 710 F.3d at 376. An opinion which does not warrant controlling weight "still must be weighed as

the regulations prescribe, with no greater scrutiny being applied to [the treating physician's] opinions than to those of the nontreating and nonexamining sources." *Gayheart*, 710 F.3d at 380.

The Commissioner is required to provide "good reasons" for discounting the weight given to a treating source opinion. §404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188 at *5; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The Sixth Circuit has stated that it will not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion. *Gayheart*, 710 F.3d at 380.

In his opinion, the ALJ noted that "little weight is given to the opinion of Dr. Olson, who the claimant testified has been his primary physician for four or five years." Doc. 8-2, PageID 51. The ALJ stated:

> Dr. Olson completed a form on July 27, 2010 indicating that the claimant can stand two hours, walk two hours, sit two hours, lift up to ten pounds occasionally, but can use feet for operating foot controls, can reach above shoulder level, can bend and can climb steps occasionally but cannot perform [any] grasping pushing or pulling or fine manipulation, and cannot squat, crawl, or climb ladders (Exhibit 20F). Dr. Olson further remarked that the claimant is unable to sit or stand without breaks, that his knees and back "give" with stress, that the

6

> claimant's pain level decreases concentration and focus, that numerous breaks are needed, that his condition will worsen with age and physical activity, and that rehabilitation has failed and surgery is pending' diagnoses included lumbar strain sprain, spinal stenosis, and glenoid tear of the left shoulder (Exhibit 20 F p 3). A form completed and signed by a physician's assistant in Dr. Olson's office on April 28, 2009 shows that the claimant was first seen in that office on May 30, 2007[,] that [the] diagnoses were "HNP L5-S1 L3-4, chronic" and "morbid obesity," that the claimant is not a surgical candidate because he smokes a pack of cigarettes daily and has a body mass index of 43, that the claimant's only prescribed therapy was medication not prescribed from that office, and that the claimant may do sedentary work (Exhibits 16F and 17F). That form also referenced notes that were not attached.

Doc. 8-2, PageID 51. The only other reference to Dr. Olson in the ALJ's decision was the notation that the "claimant's primary treating physician, Dr. Olson, did not list a knee problem as an impairment resulting in limitations[.]" Doc. 8-2, PageID 46.

Although the ALJ recognized Dr. Olson as a treating physician and obviously did not give his opinion controlling weight, he did not indicate why he concluded that Dr. Olson's opinion was not supported by medically acceptable clinical and laboratory diagnostic evidence, or why the opinion was inconsistent with other substantial evidence in the record, as required under 20 C.F.R. §404.1527(c)(2). Although he discussed other medical records concerning plaintiff's various surgeries, he did not state whether or how any of this evidence was inconsistent with Dr. Olson's assessment of plaintiff's physical capacities. The cursory statements of the ALJ are insufficient to permit a meaningful review of whether the ALJ properly applied the controlling weight test.

Having obviously concluded that Dr. Olson's opinion was not

7

entitled to controlling weight, the ALJ also did not apply the factors in §404.1527(c) in determining what other weight to give his opinion. Although a formulaic recitation of the factors listed in 20 C.F.R. §§404.1527(c)(2)-(6) and 416.927(c)(2)-(6) is not required, see *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010), any "good reasons" for discounting the weight given to a treating-source opinion must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242. The ALJ's discussion of plaintiff's treatment relationship with Dr. Olson was cursory at best. Although he referred to the fact that Dr. Olson was plaintiff's primary care physician and had treated plaintiff since May of 2007, he engaged in no analysis of how this information and other relevant factors, such as the frequency of examination or whether Dr. Olson's opinion was inconsistent with the record as a whole or was not supported by relevant evidence, contributed to his decision to give Dr. Olson's opinion "little weight."

Plaintiff argues that the ALJ also erred in failing to adequately explain the weight being assigned to other medical opinions. The only other medical opinions regarding plaintiff's physical condition specifically referred to by the ALJ are those of Dr. Klyop and Dr. Manos, who were non-treating and non-examining sources. Although the ALJ was not required to engage in the detailed analysis required by the §404.1527(c) factors in evaluating the opinions of Drs. Klyop and Manos, see *Ealy*, 594 F.3d at 514; *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir.

8

2007), relevant policy does require ALJs to consider opinions by state agency physicians and consultants and to "explain the weight given to these opinions in their decisions." Soc. Sec. Rul. No. 96-6p, 1996 WL 374180 at *1 (Soc. Sec. Admin. July 2, 1996).

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. §416.927(e)(2)(ii).

The ALJ stated that he was giving great weight to the opinions of Drs. Klyop and Manos that plaintiff was able to lift fifty pounds occasionally and twenty-five pounds frequently, could stand or walk for six hours in an eight-hour work day, had unlimited use of his left upper extremity, and could frequently perform handling and fingering with the upper right extremity. Doc. 8-2, PageID 51. However, the only reason he gave for doing so was that "[a]t the time of the hearing, the claimant was not taking the morphine he testified had previously been prescribed, and did not appear to be in significant pain." This statement alone was not sufficient to comply with Soc. Sec. Rul. No. 96-6p.[1]

In addition, when Drs. Klyop and Manos rendered their opinions on December 17, 2008, and June 30, 2009, respectively, they did not

---

[1] The court rejects any argument that the ALJ was automatically required to assign greater weight to the opinion of Dr. Olson, a treating physician, than to the opinions of Dr. Klyop and Dr. Manos, who were non-treating sources. "In appropriate circumstances, opinions from State agency medical and psychological consultants ... may be entitled to greater weight that the opinions of treating or examining sources." Soc. Sec. Rul. No. 96-6p, 1996 WL 374180 at *3; see also Lyons v. Soc. Sec. Admin., 19 F. App'x 294, 302 (6th Cir. 2001). On remand, the ALJ will have the opportunity to explain whether and why the opinions of Dr. Klyop and Manos are entitled to greater weight.

9

have the complete record before them. While this circumstance would not automatically preclude the ALJ from assigning those opinions greater weight than the opinion of a treating physician, in such a case, the Sixth Circuit requires some indication that the ALJ at least considered these new records before giving greater weight to an opinion that was not based on a review of a complete case record. *See Blakley*, 581 F.3d at 409. Here, the ALJ did summarize later treatment records in another portion of his decision, including the 2009-2010 treatment records of Dr. Cassandra, who performed surgery on plaintiff's shoulders and continued to monitor plaintiff's progress following carpal tunnel surgery, and the 2010 records of Dr. Rea, who saw plaintiff for hip pain. *See* Doc. 8-2, PageID 47, 50-51. The ALJ also summarized plaintiff's testimony at the hearing on October 27, 2010. Doc. 8-2, Page ID 49-50. However, the ALJ did not discuss what impact, if any, these later records had on his evaluation of the weight to be given the opinions of Drs. Klyop and Manos. The ALJ will have the opportunity to address this issue on remand.

B. Discussion of Mental Health Evidence

Plaintiff also argues that the ALJ's decision did not adequately state his reasons for giving various weights to the opinions of the examining and non-examining opinions concerning plaintiff's mental health. Because all of the mental health sources were non-treating physicians, the ALJ was required to "explain the weight given to these opinions" in his decision. Soc. Sec. Rul. No. 96-6p, 1996 WL 374180 at *1.

In commenting on the opinion of Dr. Kaufman, an examining source, the ALJ gave little weight to Dr. Kaufman's assessment that

10

plaintiff was unemployable from a psychological perspective, correctly noting, Doc. 8-2, PageID 51, that the ultimate issue of whether plaintiff is employable was reserved to the Commissioner. *Warner v. Comm'r of Social Security*, 375 F.3d 387, 391 (6th Cir. 2004).  The AlJ gave little weight to Dr. Kaufman's opinion that plaintiff had marked impairments in some areas, including the ability to perform activities with a schedule, to work in coordination or proximity with others, to interact appropriately with the general public and co-workers, to accept instructions from supervisors, to maintain socially appropriate behavior, and to adhere to basic standards of neatness and cleanliness. Doc. 8-2, PageID 52.  The ALJ gave some weight to Dr. Kaufman's opinion that plaintiff a had moderate impairment of ability to maintain a routine without special supervision, sustain a routine without special supervision, make work-related decisions, request assistance, respond appropriately to changes, be aware of normal hazards and take appropriate precautions, and set realistic goals or make plans independently of others.  The ALJ gave great weight to Dr. Kaufman's opinion that plaintiff had a moderate impairment of ability to understand, remember and to carry out detailed instructions, to maintain concentration for extended periods, but no impairment of ability to remember locations and work-like procedures, and to understand, remember and carry out very short and simple instructions.  However, the ALJ did not explain why he was assigning these various weights to different aspects of Dr. Kaufman's decision.[2]  Thus, remand for compliance with Soc. Sec.

---

[2] Plaintiff contends that the ALJ should not have "cherry-picked" the opinion of Dr. Kaufman by assigning little weight, some weight, and great weight to different parts of Dr. Kaufman's opinion.  This argument can cut both ways.

Rul. No. 96-6p is appropriate.

The ALJ stated that he was giving the opinion of Mr. Rain, an examining source, little weight. The ALJ notes that during his evaluation with Mr. Rain, plaintiff "reported no history of alcohol or drug involvement" and "exhibited sad and withdrawn features." Doc. 8-2, PageID 52. This was in contrast to plaintiff's testimony, as summarized by the ALJ, during which plaintiff acknowledged that he had taken prescription pain medication, including morphine and Percocet, that he "had a problem with use of alcohol in his younger days" and still drinks two or three beers on the weekends, and that he had previously used marijuana. Doc. 8-2, PageID 49. In commenting on Mr. Rain's report, the ALJ noted that plaintiff "provided an inaccurate history." Doc. 8-2, PageID 52. The ALJ further noted that Mr. Rain assessed a global functioning score of 50, but then stated that "from a functional perspective he appears to rate a GAF of 75 because he seems to have developed maintenance levels of function with his condition and reports he can lead an independent lifestyle." Doc. 8-2, PageID 52. The ALJ commented that "Mr. Rain's conclusion as to degree of impairment was not consistent with his findings." Doc. 8-2, PageID 52. The court concludes that these reasons are sufficient to comply with Soc. Sec. Rul. No. 96-6p. However, the ALJ will have the opportunity to provide further elaboration of these reasons on remand.

The ALJ gave great weight to the opinions of the non-examining

---

*White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 285 (6th Cir. 2009). There is no *per se* rule which would preclude an ALJ from according different weights to different conclusions in an expert's opinion, so long as the ALJ explains his reasons for doing so in a manner which permits adequate review of that decision.

state agency psychologists, Dr. Johnston and Dr. Tishler, who issued opinions based on a review of plaintiff's records.[3] These experts concluded that plaintiff has an affective disorder, dysthymic disorder, with mild restriction of activities of daily living, moderate difficulties in social function, moderate difficulties in maintaining concentration, persistence and pace, with no episodes of decompensation. They also concluded that plaintiff's mental impairment would not prevent him from understanding, recalling, and performing simple repetitive tasks on a routine basis or from adapting to a relatively static work-like setting where there are no strict production quotas and where the required interactions with others are minimal. Doc. 8-2, PageID 52. The ALJ noted that "[t]his opinion is more consistent with the evidence as a whole, including the claimant's testimony." Doc. 8-2, PageID 52. However, the ALJ did not elaborate on this conclusory statement. Although the ALJ summarized plaintiff's testimony concerning his activities in another portion of the decision, the ALJ did not explain why he concluded that those activities were consistent with the opinions of Drs. Johnston and Tishler. Remand for further explanation pursuant to Rule 96-6p is warranted.

---

[3] Although more weight is generally given to the medical opinion of a source who has examined the claimant than to the opinion of a source who has not, *see* 20 C.F.R. §404.1527(c)(1), this "is not a bright-line rule." *Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 463 (6th Cir. 2012). "A non-examining physician's opinion may be accepted over that of an examining physician when the non-examining physician clearly states the reasons that his opinions differ from those of the examining physicians." *Lyons*, 19 F. App'x at 302. Dr. Johnston discussed the reports of Mr. Rain and Dr. Kaufman in her report and stated why she disagreed with their findings. Therefore, it was not error *per se* for the ALJ to give her opinion more weight.

III. Conclusion

In conclusion, the court finds that the ALJ did not adequately address the factors in §404.1527(c)(2)-(6) in determining what weight to give Dr. Olson's opinion as a treating physician, nor did he explain the weight being accorded other non-treating sources pursuant to Rule 96-6p.  In the report and recommendation, the magistrate judge did a thorough analysis of the administrative record and noted evidence which supported the weight being assigned by the ALJ to the opinions of the various experts.  However, it is the ALJ as the "adjudicator" who must decide whether the treating source's medical opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques."   20 C.F.R. §404.1527(c)(2); Soc. Sec. Rul. No. 96-2p, 1996 WL 374188 at *2. Whether a medical opinion "is not inconsistent with the other substantial evidence in [the] case record" is "a judgment that adjudicators must make in each case."  20 C.F.R. §404.1527(c)(2); Soc. Sec. Rul. No. 96-2p, 1996 WL 374188 at *3.  "Administrative law judges ... must explain the weight given to [the opinions of state agency consultants] in their decisions."  Soc. Sec. Rul. No. 96-6p, 1996 WL 374180 at *1.

The purpose of the remand is to permit the ALJ to further explain his reasons for according different weights to the various treating and non-treating sources, as required by the Commissioner's policies and regulations.  The court makes no findings and expresses no opinion as to whether the administrative record supports the determinations made by the ALJ in his decision of October 28, 2010, concerning the weight to be given the expert opinions and other evidence.  The court also does not reach the

14

issue of whether there is substantial evidence to support the Commissioner's nondisability determination.  On remand, the ALJ might reach the same conclusions he expressed in his previous decision with regard to the weight to be assigned the opinions of the various experts and the other evidence of record, or he might decide to assign a particular opinion a different weight.  Those decisions are matters for the ALJ.  The ALJ may also decide, at his discretion, to revisit the ultimate issue of whether plaintiff should be awarded disability benefits based upon the weight the ALJ assigns to the various source opinions and other evidence on remand.  However, nothing in this opinion shall be construed as suggesting or requiring that the ALJ decide that ultimate issue one way or the other.

    For the reasons stated above, the court adopts the summary of the record outlined in the report and recommendation (Doc. 14) but declines to adopt the magistrate judge's recommendations concerning the sufficiency of the ALJ's discussion of the weight being given the treating and nontreating sources.  The court remands this case to the Commissioner under Sentence Four of § 405(g).  On remand, the administrative law judge shall apply the treating physician analysis to Dr. Olson's opinion and explain the weight being given to his opinion.  The administrative law judge shall also explain the weight being given to the other medical and psychological opinions in the case.

    It is so ordered.


Date: September 18, 2013           s/James L. Graham
                                      James L. Graham
                                      United States District Judge